**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| AMERICAN COLLEGE OF EMERGENCY PHYSICIANS, INDIVIDUALLY AND ON BEHALF OF ITS MEMBERS, and THE MEDICAL ASSOCIATION OF GEORGIA, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 1:18-CV-03414 |
| vs. | ) ) | The Honorable Michael L. Brown |
| BLUE CROSS BLUE SHIELD OF GEORGIA, INC., BLUE CROSS BLUE SHIELD HEALTHCARE PLAN OF GEORGIA, INC., and ANTHEM INSURANCE COMPANIES, INC., | ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS THE COMPLAINT**

## PRELIMINARY STATEMENT

Plaintiffs the American College of Emergency Physicians ("ACEP") and the Medical Association of Georgia ("MAG") (collectively, "Plaintiffs") assert a variety of flawed federal and state claims against Defendants Blue Cross Blue Shield Healthcare Plan of Georgia, Inc., Blue Cross and Blue Shield of Georgia, Inc. (collectively "BCBS Georgia") and Anthem Insurance Companies, Inc. (with BCBS Georgia, "Defendants").  None has merit.

Importantly, BCBS Georgia's contracts with its members provide that treatment of non-emergency conditions in hospital emergency departments ("ED") are not covered services.  Nonetheless, Plaintiffs allege – with no factual basis – that when BCBS Georgia reviews claims for ED services to determine if the claims are covered ("ED Review"), it misapplies the "prudent layperson standard," a statutory standard that defines when a medical condition is deemed an emergency.

Despite Plaintiffs' conclusory allegations that patients have been and will be harmed by Defendants' ED Review, Plaintiffs do not identify a single improperly denied medical claim or a single patient who allegedly was harmed.  Notably, on July 26, 2018, the Superior Court in Fulton County denied a Georgia hospital system's motion for a preliminary injunction seeking to enjoin Defendants' ED Review.  The Court ruled that the plaintiff hospital system failed to meet even a

single element for an injunction – specifically finding that the plaintiff was unlikely to prevail on the merits of its claims criticizing the ED Review.  *See Northeast Georgia Health System, Inc., et al. v. Blue Cross Blue Shield of Georgia, Inc., et al.*, 2018 WL 4182090 (Sup. Ct. Fulton County July 26, 2018).  Plaintiffs' claims here are similarly flawed.

As a threshold matter, Plaintiffs do not have associational standing to assert claims on behalf of their members and their members' patients.  Associational standing is only appropriate in cases that do not require discrete individualized determinations.  Here, any claim that the prudent layperson standard was violated would require the Court to assess highly individualized facts involving the claim, patient, medical records and the governing health plan. These individualized inquiries are incompatible with associational standing.  The Court should dismiss this action on that ground alone.

Plaintiffs' claims also must be dismissed for several additional reasons.

**First,** Plaintiffs' Count I for violation of the Emergency Medical Treatment and Labor Act ("EMTALA") cannot apply to Defendants, as only hospitals – not Defendants – are bound by and may be sued for violation of EMTALA.

**Second**, Plaintiffs' Counts I and IV for violation of the Affordable Care Act ("ACA") fail because there is no private right of action for violations of ACA.

ACA's statutory text, its implementing regulation and corresponding Georgia law do not expressly allow for a private right of action.  And, alleged violations of these laws are enforced by the government, indicating no intent for an implied private right of action.

**Third,** Plaintiffs' Count II for violation of ERISA fails because Plaintiffs do not identify a single ERISA plan or plan term that Defendants purportedly violated. Plaintiffs likewise do not attach supposed "assignments" or allege the language of any "assignments" vesting them with a right to sue on behalf of patients.

**Fourth,** Plaintiffs Count III for violation of Title VI of the Civil Rights Act of 1964 ("Title VI") based on the assertion that Defendants' ED Review disparately impacts minority communities also fails.  There is no private right of action for disparate impact claims under Title VI.   Moreover, such a claim cannot be assigned, and Plaintiffs do not allege any plausible facts to state this claim.

**Fifth,** Plaintiffs' Counts V and VI for attorneys' fees and an injunction are prayers for remedies, not proper causes of action.  These claims are also derivative of the counts above, which all fail.

The Court should dismiss the Complaint with prejudice.

## FACTUAL BACKGROUND

## I.   THE UNITED STATES' EMERGENCY DEPARTMENT PROBLEM

The use of hospital emergency departments for non-emergency medical conditions has been a growing problem.  Studies have shown that ERs are treating up to 24 percent of patients for plainly non-emergency conditions.[1]  To compound the problem, hospitals have increased their charges for emergency department visits by 113 percent in the last seven years, further increasing costs for private healthcare payers.[2]  Government sponsored programs are having the same problem; the Center for Public Integrity estimates that inflated ED charges in the Medicare program cost taxpayers at least $11 billion over a decade's time.[3]  To

---

[1] *See, e.g.*, Avoidable Emergency Department Usage Analysis, TRUVEN HEALTH ANALYTICS, available at http://www.averytelehealth.com/wp-content/uploads/2018/01/Avoidable-Emergency-Department-Usage-Analysis-Truven-Health-Analytics.pdf.  The Court may take judicial notice of these public studies and reports on a motion to dismiss.  *See U.S. ex rel. Osheroff v. Humana Inc.,* 776 F.3d 805, 812, n. 4 (11th Cir. 2015) ("Courts may take judicial notice of documents such as the newspaper articles at issue here for the limited purpose of determining which statements the documents contain (but not for determining the truth of those statements).")

[2] *See ER Spending among the Commercially Insured Continued to Rise in 2016, Driven by the Price and Use of High Severity Cases*, HEALTH CARE COST INSTITUTE, available at http://www.healthcostinstitute.org/healthy-bytes/.

[3] *Cracking the Codes: Hospitals Grab at Least $1 Billion in Extra Fees for Emergency Room Visits*, The Center for Public Integrity, available at https://www.publicintegrity.org/2012/09/20/10811/hospitals-grab-least-1-billion-extra-fees-emergency-room-visits.

address this troubling trend, several government and private health care payers, including BCBS Georgia, have explored initiatives that cut down on unnecessary and excessive ED spending to help control the overall cost of healthcare in the United States.[4]

## II.     THE ED REVIEW AND PLAINTIFFS' ALLEGATIONS

BCBS Georgia is a managed care company that issues and administers health benefits plans throughout the state of Georgia.  Compl. ¶¶ 12-15.  It has agreements with its members or their employer groups ("Membership Agreements") that specify the types of services and benefits that will be reimbursed under the member's plan. *See Northeast Georgia Health System,* 2018 WL 4182090, at *1. BCBS Georgia's Membership Agreements generally state, among other things, that non-emergency care that is rendered in the emergency room is not a covered service.  *Id.* At *2-3.  For purposes of determining coverage, "Emergency" or "Emergency Medical Condition" is defined as follows:

> **Emergency (Emergency Medical Condition)**
> "Emergency" or "Emergency Medical Condition" means a medical or behavioral condition of recent onset and sufficient severity, including but not

---

[4] *See, e.g.*, Washington State Medicaid: Implementation and Impact of "ER is for Emergencies" Program, CENTER FOR HEALTH POLICY AT BROOKINGS, available at https://www.brookings.edu/wp-content/uploads/2016/07/050415EmerMedCaseStudyWash.pdf (Washington implemented an "ER is for Emergencies" program that saved over $34 million during its first year.

limited to, severe pain, that would lead a prudent layperson, possessing an average knowledge of medicine and health, to believe that his or her condition, sickness, or injury is of such a nature that not getting immediate medical care could result in (a) placing the patient's health or the health of another person in serious danger or, for a pregnant woman, placing the woman's health or the health of her unborn child in serious danger; (b) serious impairment to bodily functions; or (c) serious dysfunction of any bodily organ or part.

*Id.*

Beginning in July 2017, BCBS Georgia began reviewing certain ED claims to determine whether they concerned an emergency and, therefore, were covered services under the Membership Agreements. Compl. ¶ 2; *See Northeast Georgia Health System,* 2018 WL 4182090, at *3. This ED Review process is detailed more fully in the *Northeast Georgia Health System* decision. *See id.* *3-4. The goal of the ED Review is to reduce inappropriate use of EDs for non-emergencies.

Plaintiff ACEP is a trade group that allegedly represents "emergency physicians, emergency medicine residents and medical students." Compl. ¶¶10, 17. Plaintiffs do not allege any facts regarding Plaintiff MAG's members or its organizational purpose. Plaintiffs purport to "bring this action on behalf of themselves and their association members." *Id*. ¶¶ 1, 4.

Plaintiffs challenge the ED Review, alleging that it "is contradictory to the 'prudent layperson'" standard which provides that a patient is experiencing an "emergency medical condition" if the condition involves:

acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in (i) placing the health of the individual (or, with respect to a pregnant woman, the health of the woman or her unborn child) in serious jeaopardy, (ii) serious impairment to bodily functions; or (iii) serious dysfunction of any bodily organ . . .

42 U.S.C. § 1395dd(e)(1); *see also* Compl. ¶ 4 (citing to the same).

The Complaint contains few allegations discussing the ED Review, how it has been applied, or how it has impacted Plaintiffs or their members. *Id.* Moreover, despite soliciting patient testimonials on ACEP's website, Plaintiffs do not identify a single claim that has been reviewed and denied under the ED Review in alleged violation of the prudent layperson standard. *See generally id.* Plaintiffs assert counts for (1) violation of the prudent layperson standard under ACA and EMTALA, (2) the recovery of benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B), (3) violation of Title VI, (4) violation of state and federal group health regulations, 45 C.F.R. § 147.138(b) and O.C.G.A. § 33-20A-9, (5) expenses of litigation under ERISA, 29 U.S.C. § 1132(g)(1), and (6) injunctive relief. *Id.* ¶¶ 77-120.

## STANDARD OF REVIEW

**Rule 12(b)(6):** To survive a motion to dismiss under Rule 12(b)(6), "a complaint 'must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.'" *Harris v. Chase Home Fin., LLC*, 524 F. App'x 590, 591 (11th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009)).  "'[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action will not' be enough to survive a Rule 12(b)(6) motion to dismiss." *Harris*, 524 F. App'x at 591 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Regardless of the alleged facts . . . a court may dismiss a complaint on a dispositive issue of law." *Clark v. Governor's Office of Planning & Budget*, 2013 WL 4718371, at *3 (N.D. Ga. Sept. 3, 2013).

**Rule 12(b)(1):** When making a facial challenge to jurisdiction on the pleadings under Rule 12(b)(1), the Court applies the same standard of review that is applied under Rule 12(b)(6) to determine whether Plaintiffs have "sufficiently alleged a basis of subject matter jurisdiction." *Bailey v. Wells Fargo Bank, N.A.*, 174 F. Supp. 3d 1359, 1361 (N.D. Ga. 2016).  Thus, "at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating'" standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  In addition, "a plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

## ARGUMENT

## I.     PLAINTIFFS DO NOT HAVE ASSOCIATIONAL STANDING.

ACEP and MAG cannot assert associational standing on behalf of their members because well-established federal law dictates that a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *In re Checking Account Overdraft Litig.*, 780 F.3d at 1038. Under limited circumstances, federal courts permit associations to seek redress for their members' injuries, even if there is no showing of injury to the association itself. *Georgia Republican Party v. S.E.C.*, 888 F.3d 1198, 1201 (11th Cir. 2018). However, to demonstrate such standing, the association must allege that "[1] its members would otherwise have standing to sue in their own right, [2] the interests at stake are germane to the organization's purpose, and [3] neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.* at 1201. Plaintiffs bear the burden of establishing standing. *Id.* at 1201. Here, both Plaintiffs fail to meet the first and third elements. MAG additionally does not satisfy the second element, as the Complaint alleges no facts about MAG's members or purpose, and therefore cannot allege how "the interests at stake are germane to the organization's purpose." *Georgia Republican Party*, 888 F.3d at 1203.

### A.   Plaintiffs Fail to Show That Their Members Would Otherwise Have Standing to Sue in Their Own Right.

To meet the first element of associational standing, "an organization must make specific allegations establishing that at least one identified member ha[s] suffered or [will] suffer harm."  *Georgia Republican Party*, 888 F.3d at 1203 (dismissing claim for lack of standing; "the Georgia Party has failed to allege a specific member will be injured by the rule [that the party was contesting] . . .").  The association cannot rely on the mere likelihood or statistical probability that one of its members was injured; it must identify at least one member who has been or will imminently be injured.  *See Summers v. Earth Island Inst.*, 555 U.S. 488, 497-498 (2009).

Here, Plaintiffs' individual physician members do not have standing to (1) assert a claim against Defendants under EMTALA, (2) assert a private cause of action under the ACA or the federal and Georgia regulations, (3) bring a claim for benefits under an ERISA plan, or (4) allege a Title VI claim on behalf of their patients.  But even beyond these fatal deficiencies, Plaintiffs have not identified a single member who purportedly sustained harm due to the ED Review.  *See generally* Complaint.  For this reason, Plaintiffs do not have associational standing to challenge the ED Review.

**B.    Plaintiffs' Claims Will Require Individualized Inquiry.**

Plaintiffs also do not have associational standing because the claims they assert and the relief they seek require individualized determinations that are incompatible with associational standing.  *See Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1354 (11th Cir. 2009) ("[A]n association seeking damages on behalf of its members cannot claim associational standing . . . because such claims usually require "individualized proof."); *Rivell v. Private Health Care Sys., Inc.*, 887 F. Supp. 2d 1277, 1289 (S.D. Ga. 2012) (dismissing MAG's claims for misappropriation of likeness because MAG would need to establish that the appropriation in each individual case occurred without consent; "associational standing give[s] way when discrete, individualized inquiries are necessitated . . . .")  *accord Warth v. Seldin*, 422 U.S. 490, 515-18 (1975) (no associational standing for injuries to its members because "the damages claims are not common to the entire membership. . . each member of [the plaintiff association] who claims injury . . .  [must] be a party to the suit, and [the association] has no standing to claim damages on his behalf.").

In this case, Plaintiffs seek "[c]ompensatory damages with pre-judgment and post-judgment interest," as well as "[p]ayments for all benefits due under ERISA plans pursuant to 29 U.S.C. § 1132(a)(1)(B)."  Compl. at p. 42.  However,

"[d]amages claims are incompatible with associational standing . . ." *See Connecticut State Dental Ass'n*, 591 F.3d at 1354 (association of healthcare providers did not have standing to bring ERISA claims and seek damages on behalf of its members). Plaintiffs thus lack standing to bring ERISA claims or to seek compensatory damages in connection with any of their other claims.[5]

Even beyond the issue of damages, Plaintiffs' claims require resolution of many individualized questions that preclude associational standing. A determination of whether the review of a specific ED claim violated the prudent layperson standard will require the Court to assess, at a minimum, on an individualized basis, whether a prudent layperson, possessing an average knowledge of medicine, would believe that his or her condition was of such a nature that not getting immediate medical care could result in (a) placing the patient's health in serious jeopardy, (b) serious impairment to bodily functions, or

---

[5] Plaintiffs allege that their associations have been "injured directly by the requirement that they devote substantial time and resources to address these issues by counseling their members on their responses to Defendants' denials." Compl. ¶ 58. ACEP's alleged purpose is to be a "leading advocate for emergency physicians, their patients, and the public in emergency departments," and Plaintiffs indicate that they are both "advocat[es] for the rights of their physician members, and patients alike." Compl. ¶¶ 1, 10. Plaintiffs are not entitled to compensatory damages for simply doing what their organizations are intended to do in the normal course of their business operations. Moreover, compensatory damages are not available under Section 502(a)(1)(B) of ERISA. *Godfrey v. BellSouth Telecommunications, Inc.*, 89 F.3d 755, 761 (1th Cir. 1996)

(c) serious dysfunction of any bodily organ or part.  *See* 42 U.S.C. § 1395dd(e)(1);

O.C.G.A. § 33-20A-3; *see also Rivell*, 887 F. Supp. 2d at 1292-93 (dismissing

MAG's claims where each case required an individualized inquiry).  Moreover, to

adjudicate Plaintiffs' ERISA claims, this Court will also need to assess on an

individualized basis, among other things, (i) whether the association member

received a valid assignment, (ii) whether the ERISA plan at issue contained an

anti-assignment provision, (iii) whether the participant or beneficiary exhausted his

or her administrative remedies, and, most importantly, (iv) whether BCBS

Georgia's denial of the beneficiary's claim constituted a breach of that

beneficiary's specific ERISA plan.  *See infra* Section IV.  These individualized

inquiries defeat associational standing.  *See Rivell*, 887 F. Supp. 2d at 1289.

## II.   EMTALA CLAIMS CANNOT BE ASSERTED AGAINST DEFENDANTS (COUNT I)

Plaintiffs incorrectly allege that Defendants violated EMTALA by

conducting the ED Review.  Plaintiffs' EMTALA claim fails because EMTALA

claims may only be asserted against hospitals, not Defendants, and Defendants'

alleged conduct is not actionable under EMTALA.

Congress enacted EMTALA, 42 U.S.C. § 1395dd, "to prevent 'patient

dumping,' the practice of some hospital emergency rooms turning away or

transferring indigents to public hospitals without prior assessment or stabilization

treatment." *Harry v. Marchant*, 291 F.3d 767, 772 (11th Cir. 2002).  A patient who suffers harm as a result of an EMTALA violation may initiate a "civil action against the participating hospital."  42 U.S.C. § 1395dd(d)(2)(A).  Thus, EMTALA's express terms are "explicitly limited to actions against participating hospitals."  *Dearmas v. Av-Med*, *Inc.*, 814 F.Supp. 1103, 1108-09 (S.D. Fla. 1993).  Defendants are not hospitals.   Compl. ¶ 12 (alleging that Defendants are "plan administrators, claims administrators, and/or insurers for health plans and insurance policies . . .").  Accordingly, Plaintiffs' EMTALA claims should be dismissed.  *Dearmas*, 814 F. Supp. at 1108-09 (dismissing EMTALA claims because "the plain wording of § 1395dd" indicates that an HMO could not be sued under EMTALA); *Bourbon Cmty. Hosp., LLC v. Coventry Health & Life Ins. Co.,* 2016 WL 51269, at *6 (W.D. Ky. Jan. 4, 2016) (dismissing EMTALA claim because "EMTALA does not apply to MCOs").

       In any event, Plaintiffs also do not allege that Defendants engaged in conduct prohibited by EMTALA; namely, failing to provide emergency room screening or discharging a patient without stabilization.  This is another ground for dismissal of this claim.  *See Apollo MD Business Servs., L.L.C., et al., v. Amerigroup et al.,* 2017 WL 10185527, at *12 (N.D. Ga Nov. 27, 2017) (dismissing EMTALA claim,  and finding that "there is no evidence that Congress

intended for EMTALA to apply to issues arising from insurers' reimbursement for care administered pursuant to the statue's requirements."); *Bourbon Cmty. Hosp.*, 2016 WL 51269, at *7 (dismissing claim that MCO violated EMTALA by underpaying hospital for emergency care).

## III.   PLAINTIFFS HAVE NO PRIVATE RIGHT OF ACTION UNDER THE ACA (COUNT I) OR FEDERAL OR STATE INSURANCE LAWS (COUNTS IV)

Plaintiffs allege that Defendants violated a provision of the Affordable Care Act, 42 U.S.C. § 300gg-19a(b),[6] its implementing regulation, 45 C.F.R. § 147.138(b), and the corresponding Georgia statute, O.C.G.A. § 33-20A-9, by allegedly deviating from their respective articulations of the prudent layperson standard.  Comp. ¶¶ 60, 78-83, 102-107.   Plaintiffs' claims should be dismissed because these laws and regulations do not expressly or impliedly authorize a private right of action.

A private right of action exists only where a statute expressly authorizes such a private right, or where there is "affirmative evidence of Congress's intent" to create such a right.  *Bank v. Homes By Williamscraft, Inc.*, 2009 WL 3753585, at *2 (N.D. Ga. Nov. 6, 2009).  Georgia law has an even higher standard, holding that

---

[6] Plaintiffs are presumably suing for alleged violations of the ACA provision addressing the prudent layperson standard, although they fail to identify any specific ACA provision under which they are suing.

"the statutory text must expressly provide a private cause of action . . . ." *Walker v. Oglethorpe Power Corp.*, 341 Ga. App. 647, 657 (2017).

Federal courts repeatedly hold that the ACA does not create a private right of action. *See, e.g.*, *Ass'n of New Jersey v. Horizon Healthcare Servs., Inc.*, No. CV 16-08400(FLW), 2017 WL 2560350, at *3-5 (D.N.J. June 13, 2017) (no private right of action under 42 U.S.C. § 300gg-5); *Mills v. Bluecross Blueshield of Tenn., Inc.*, 2017 WL 78488, at *6 (E.D. Tenn. Jan. 9, 2017) (no implied private right of action under 42 U.S.C. § 300gg-22); *Dominion Pathology Labs., P.C. v. Anthem Health Plans of Va., Inc.*, 111 F. Supp. 3d 731, 736 (E.D. Va. 2015) (no implied private right of action under 42 U.S.C. § 300gg-5).  Georgia courts similarly hold that there is no private right of action for violation of the insurance laws codified in Title 33 of the Georgia Code, unless it is expressly provided for. *See State Farm Mut. Auto. Ins. Co. v. Hernandez Auto Painting & Body Works, Inc.*, 312 Ga. App. 756, 761 (2011) (no private right of action under Title 33).

Here, the statutory provisions upon which Plaintiffs rely, 42 U.S.C. § 300gg-19a(b) and O.C.G.A. § 33-20A-9, do not expressly allow for a private right of action.  And, as discussed below, a private right cannot be implied because neither the statutory text nor the structure reflects a legislative intent to create such a right.

- 16 -

**A.** **The Statutory Text Reflects No Legislative Intent to Create an Implied Private Right of Action.**

"Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to" create a private right of action. *Alexander v. Sandoval*, 532 U.S. 275, 289 (2001). 42 U.S.C. § 300gg-19a focuses on the regulated entity (*i.e.*, the Managed Care Organizations), rather than the protection of any particular individuals. Specifically, the statute says that if "a health insurance issuer . . . covers any benefits with respect to services in an emergency department of a hospital, the plan or issuer shall cover emergency services . . . ." 42 U.S.C. § 300gg-19a(b)(1) (emphasis added); see also 45 C.F.R. § 147.138(b)(2) (implementing regulation providing that the "plan or issuer … [should] provide coverage for emergency services in the following manner . . . ."). Similarly, the Georgia statute states that "every managed care plan shall include . . ." O.C.G.A. § 33-20A-9. Because these statutory provisions focus on the entities that the statute seeks to regulate (*i.e.*, Managed Care Organizations), and not the protection of any particular individual, there is no legislative intent to create a private right of action, and the claims in Counts I and IV should be dismissed. *See Martes v. C.E.O. of S. Broward Hosp. Dist.*, 683 F.3d 1323, 1328 (11th Cir. 2012) (no private right where statute focuses on the billing practices of medical providers rather than the individual patients).

**B.     The Statutes Are Subject to Government Enforcement, Precluding an Implied Private Right of Action.**

The lack of legislative intent to confer a private right for these statutes can also be seen from the regulatory enforcement of these provisions.  "The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others."  *Sandoval,* 532 U.S. at 290.  All of the laws codified at 42 U.S.C. § 300gg, *et seq.*, including the ACA provision at issue here, 42 U.S.C. § 300gg-19a, are subject to an elaborate framework of government enforcement through state regulators or the U.S. Department of Health and Human Services (including administrative hearings, penalties, and judicial review).  *See* 42 U.S.C. § 300gg-22.  Georgia's insurance laws are similarly subject to a comprehensive enforcement scheme.  Violations of the insurance laws can only be enforced by the Insurance Commissioner.  *See* O.C.G.A. § 33-2-24.  Under Chapter 20, reimbursement disputes involving health insurers are reviewed by the Insurance Commissioner.  *See* O.C.G.A. § 33-20-30. These government enforcement mechanisms preclude a private right under these statutory provisions.  *See Mills*, 2017 WL 78488, at *6 (finding no implied private right under 42 U.S.C. § 300gg *et seq.* because "enforcement of these requirements [is left] to the states and the Secretary of Health and Human Services, not individuals"); *Cross v. Tokio Marine & Fire Ins. Co.*, 254 Ga.App. 739, 741 (2002) (O.C.G.A § 33–3–28(d) did not

create a private right of action because there was no express right created, and the "failure to comply with the statute comes within the conduct subject to sanctions by the Insurance Commissioner as the exclusive regulatory remedy.").[7]

## IV.   PLAINTIFFS' ERISA CLAIMS ARE IMPERMISSIBLY VAGUE (COUNT II)

Plaintiffs allege that:  (1) their unidentified members treat patients who are insured under unidentified ERISA plans; (2) those patients assigned their benefits to Plaintiffs' members through unidentified assignments; (3) Defendants violated the unidentified plan terms by denying coverage for the unidentified emergency claims.  Compl. ¶¶ 89-93.  Plaintiffs' claims must be dismissed because they do not identify a single patient, plan, plan term, emergency claim or assignment, and ERISA claims cannot survive based on such conclusory allegations.

### A.   Plaintiffs Do Not Identify Any ERISA Plans Or Provisions.

ERISA's civil action enforcement provision allows a plan participant or beneficiary to file a civil action in order to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).

---

[7] Because there is no private right of action under 42 U.S.C. § 300gg-19a(b), there is similarly no private right under its implementing regulation, 45 C.F.R. § 147.138(b).  *See Sandoval*, 532 U.S. at 291 (2001) ("Language in a regulation . . . may not create a right that Congress has not . . . Agencies may play the sorcerer's apprentice but not the sorcerer himself.").

Because an ERISA claim is premised on the violation of plan terms, a "plaintiff who brings a claim for benefits under ERISA must identify a specific plan term that confers the benefit in question."  *Stewart v. National Educ. Ass'n*, 404 F.Supp.2d 122, 130 (D.D.C. 2005); *accord Sanctuary Surgical Ctr., Inc. v. UnitedHealthcare, Inc.*, 2011 WL 6935289, at *3 (S.D. Fla. Dec. 30, 2011) (in order to survive a motion to dismiss, a plaintiff must identify "the specific plans at issue with respect to each of the patients."); *In re Managed Care Litig.,* 2009 WL 742678, at *3 (S.D. Fla. Mar. 20, 2009) ("[F]ailure to identify the controlling ERISA plans makes the [c]omplaint unclear and ambiguous. . . .").

    Here, Plaintiffs do not identify a single ERISA plan or plan provision, but instead baldly assert that their ERISA claim is in "connection with claims for health care services rendered to the Defendants' insureds, which include health benefit plans governed by ERISA."  Compl. ¶ 89.  This lack of detail "prevent[s a] [d]efendant from crafting a responsive pleading because [the] [d]efendant is not sufficiently apprised of the facts underlying [the] [p]laintiffs' claims."  *Sanctuary Surgical*, 2011 WL 6935289, at *3.[8]  Accordingly, Count II should be dismissed.

---

[8] For example, as discussed in the next section, a provider only has standing to sue under ERISA § 502 if a claim was validly assigned to it, but many ERISA plans specifically prohibit such assignments.  Plaintiffs' failure to identify the ERISA plans at issue prevents Defendants from asserting this defense.

*See id.* (dismissing ERISA claim where plaintiff failed to identify ERISA plans it was suing under); *In re Managed Care Litig.*, 2009 WL 742678, *4 (same); *Forest Ambulatory Surgical Assocs., L.P. v. United HealthCare Ins. Co.*, 2011 WL 2748724, at *5 (N.D.Cal. July 13, 2011) (dismissing ERISA claims where complaint did not make "reference to the terms of the controlling plans.").[9]

### B.    Plaintiffs Do Not Identify Any Specific Assignments.

Only a plan participant or beneficiary can sue under Section 502(a)(1) of ERISA.  *See* 29 U.S.C. § 1132(a)(1)(B).  "Healthcare providers [like Plaintiffs,] fall outside this group" but can "obtain derivative standing by securing an assignment of rights from a party with standing."  *Sanctuary Surgical Ctr., Inc. v. Aetna Inc.*, 546 F. App'x 846, 851 (11th Cir. 2013).  An assignment is a contract, and "like any other contract, the scope of the assignment depends foremost upon the language of the agreement itself."  *Sanctuary Surgical*, 2011 WL 6935289, at *4.  Accordingly, in order to survive dismissal under Rule 12(b)(6), a plaintiff must "provide the language of the actual assignments."  *Id.*

Plaintiffs do not specify the language of a single assignment or identify a single patient who has assigned his or her benefits.  Plaintiffs instead conclusorily

---

[9] Plaintiffs' ERISA claims also fail because BCBS Georgia only employed the ED Review in Georgia for individual commercial plans, which are not subject to ERISA.  *See Northeast Georgia Health System,* 2018 WL 4182090, at *3.

allege that "Defendants' insureds [] are enrolled in ERISA plans and have signed agreements, which contain provisions for assignments of benefits."  Compl. ¶ 90. Such conclusory pleading is insufficient to state a claim, and is another reason that Plaintiffs' ERISA claim must be dismissed.  *See Apollo MD,* 2017 WL 10185527, at *12 (dismissing ERISA claim because "Plaintiff has not identified any patients by whom these assignments were executed, nor has Plaintiff described the terms of those assignments."); *Sanctuary Surgical*, 2011 WL 6935289, at *4 (dismissing ERISA claim where the complaint did not specify assignment language); *see also Sanctuary Surgical Ctr., Inc. v. Aetna, Inc.*, 2012 WL 993097, at *2 (S.D. Fla. Mar. 22, 2012) (same).[10]

## V.   PLAINTIFFS' DISPARATE IMPACT CLAIMS HAVE NO PRIVATE RIGHT OF ACTION, ARE NOT ASSIGNABLE, AND ARE NOT PLAUSIBLY ALLEGED (COUNT III).

In Count III, Plaintiffs conclusorily alleges that "Defendants participate[d] in numerous Federal health insurance programs" and that the ED Review, "although facially neutral, has a disparate impact on certain members of protected classes by

---

[10] Because Plaintiffs' ERISA claim fails, their request in Count V for the expense of litigation under 29 U.S.C. § 1132(g) must be dismissed as well.  *See Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010) ("[A] fees claimant must show 'some degree of success on the merits' before a court may award attorney's fees under § 1132(g)(1).").

limiting access to emergency department care." *See* Compl. ¶¶ 70, 100.  Plaintiffs'
Title VI claim fails on numerous levels.

**First**, Plaintiffs "[cannot] bring a disparate impact claim against
[Defendants] under Title VI because Title VI does not create a private right of
action for such a claim." *McDuffie v. City of Jacksonville, Fla.*, 625 F. App'x 521,
523-24 (11th Cir. 2015) (citing *Alexander v. Sandoval*, 532 U.S. 275, 293 (2001));
*Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 178 (2005) ("*Sandoval* held
that private parties may not invoke Title VI regulations to obtain redress for
disparate-impact discrimination because Title VI itself prohibits only intentional
discrimination.").  Accordingly, Plaintiffs' allegation that the ED Review is
"facially neutral," and thus does not intentionally discriminate against any
protected class, dooms their Title VI claim.  *Compare id. with* Compl. ¶ 100.

**Second**, Plaintiffs cannot assert standing on behalf of their members'
patients to bring a Title VI claim.  Parties are generally required to assert their own
legal rights and interests to have standing and cannot rely on the rights and
interests of third parties.  *In re Checking Account Overdraft Litig.*, 780 F.3d 1031,
1038 (11th Cir. 2015) (citation omitted).  Plaintiffs claim that "Defendants'
insureds routinely agree to assign their health insurance benefits," Compl. at ¶ 55,
but even if these allegations were well-pled (which they are not), Georgia and

federal law prohibit plaintiffs from assigning their rights to personal injury claims, including civil rights discrimination claims.  *Cf. Evans v. Boyd Restaurant Group, LLC*, 240 F. App'x 393, 398-99 (11th Cir. 2007) (finding a party's assignment of a claim under Title VII of the Civil Rights Act was void).  Even if Plaintiffs' members' patients had assigned their rights to assert discrimination claims under Title VI (which is not alleged), this assignment would be void.  *See id.*

**Third,** Plaintiffs' scant and conclusory allegations fail to plausibly state a discrimination claim under Title VI.  Plaintiffs do not identify (a) how the ED Review excludes participation in a specific program that receives federal financial assistance, (b) what protected class is disparately impacted as a result of the ED Review, or (c) how that unspecified class is disparately impacted.  The Eleventh Circuit has upheld the dismissal of pleadings that contained significantly more facts than those contained in Plaintiffs' Complaint.  *See, e.g.*, *Pouyeh v. Bascom Palmer Eye Inst.*, 613 F. App'x 802, 809 (11th Cir. 2015) (dismissing a plaintiff's claim under Title VI because, among other things, his allegations of exclusion based on national origin was "wholly conclusory"); *Humphrey v. United Parcel Serv.*, 200 F. App'x 950, 952 (11th Cir. 2006) (same).  For this additional reason, Plaintiffs' Title VI claim should be dismissed.

## VI.   PLAINTIFFS CANNOT SEEK INJUNCTIVE RELIEF WITHOUT AN UNDERLYING CAUSE OF ACTION (COUNT VI).

Plaintiffs' sole remaining "count" for injunctive also fails because Plaintiffs have no independent cause of action supporting it.  As established above, Plaintiffs have failed to state a claim for a cause of action through which they may seek injunctive relief.  *Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1127 (11th Cir. 2005) ("[A]ny motion or suit for either a preliminary or permanent injunction must be based upon a cause of action . . . There is no such thing as a suit for a traditional injunction in the abstract.").  Accordingly, Plaintiffs' "count" for injunctive relief should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiffs' Complaint with prejudice, and for any further relief that this Court deems proper and just.

Respectfully submitted this 7th day of September, 2018.

/s/ James L. Hollis
James L. Hollis
Georgia Bar No. 930998
**BALCH & BINGHAM, LLP**
30 Ivan Allen Jr. Blvd. N.W., Suite 700
Atlanta, Georgia 30308
Telephone: (404) 261-6020
Facsimile: (404) 261-3656
E-mail: jhollis@balch.com

Kenneth Smersfelt (*Pro Hac Vice forthcoming*)
**REED SMITH LLP**
355 South Grand Avenue, Suite 2800
Los Angeles, California 90071
Telephone: (213) 457-8001
Facsimile: (213) 457-8080
E-Mail: ksmersfelt@reedsmith.com

Martin Bishop (*Pro Hac Vice forthcoming*)
Thomas C. Hardy (*Pro Hac Vice forthcoming*)
**REED SMITH LLP**
10 South Wacker Drive, 40th Floor
Chicago, Illinois 60606
Telephone: (312) 207-1000
Facsimile: (312) 207-6400
E-Mail: mbishop@reedsmith.com
E-Mail: thardy@reedsmith.com

### <u>CERTIFICATE OF COUNSEL REGARDING FONT SIZE</u>

Counsel certifies that the foregoing has been prepared using Times New Roman font size 14 in accordance with Local Rules 5.1(B)(3) and 7.1(D).

This the <u>7th</u> day of September, 2018.


/s/ James L. Hollis

James L. Hollis

## **CERTIFICATE OF SERVICE**

I hereby certify that on this the <u>7th</u> day of September, 2018 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send an e-mail notification of such filing to the following attorney of record:

> Howard W. Reese, III, Esq.
> Brittany H. Cone, Esq.
> **HALL BOOTH SMITH, P.C.**
> 191 Peachtree Street, N.E., Suite 2900
> Atlanta, Georgia 30303-1775
> treese@hallboothsmith.com
> bcone@hallboothsmith.com


> /s/ James L. Hollis
> James L. Hollis