# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

AMERICAN COLLEGE OF EMERGENCY )
PHYSICIANS, INDIVIDUALLY AND )
ON BEHALF OF ITS MEMBERS, and )
THE MEDICAL ASSOCIATION OF )
GEORGIA, )
                               )
           Plaintiffs, )  Civil Action No. 1:18-CV-03414
                               )
vs. )  The Honorable Michael L. Brown
                               )
BLUE CROSS BLUE SHIELD OF )
GEORGIA, INC., BLUE CROSS BLUE )
SHIELD HEALTHCARE PLAN OF )
GEORGIA, INC., and ANTHEM )
INSURANCE COMPANIES, INC., )
                               )
           Defendants. )

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

## PRELIMINARY STATEMENT

Plaintiffs, the American College of Emergency Physicians ("ACEP") and the Medical Association of Georgia ("MAG") (collectively, "Plaintiffs"), assert a variety of flawed federal and state claims against Defendants Blue Cross Blue Shield Healthcare Plan of Georgia, Inc., Blue Cross, Blue Shield of Georgia, Inc. (collectively "BCBS Georgia") and Anthem Insurance Companies, Inc. (with BCBS Georgia, "Defendants").  Despite taking two bites at the apple, Plaintiffs' allegations still do not, and cannot, assert any actionable claims.

Plaintiffs' claims arise from BCBS Georgia's review of emergency department ("ED") claims to determine whether those services constitute an emergency and are therefore covered under members' contracts for certain types of health plans (*i.e.*, the "ED Review").  Plaintiffs assert, without any supporting allegations or evidence, or even a description of the ED Review, that the ED Review violates the "prudent layperson standard," a federal standard used to determine whether a patient is experiencing an emergency medical condition.

Notably, in July 2018, after a two day hearing, a Georgia state court denied a Georgia hospital system's motion for a preliminary injunction seeking to enjoin the ED Review.  The Court ruled that the plaintiffs failed to meet even a single element for an injunction and specifically found that the ED Review follows the

268335.1

prudent layperson standard.  *See Northeast Georgia Health System, Inc., et al. v. Blue Cross Blue Shield of Georgia, Inc., et al.*, 2018 WL 4182090 (Sup. Ct. Fulton County July 26, 2018).  A copy of the opinion is attached as **Exhibit A** to this Memorandum.  This recent, on-point, decision underscores the futility of the claims asserted in Plaintiff's First Amended Complaint ("FAC").

Plaintiffs' amended claims remain unsupportable for the following reasons:

***First***, Plaintiffs fail to plead any facts supporting their bare conclusion that the ED Review violates the prudent layperson standard, thus precluding all of their claims for relief.

***Second***, Plaintiffs have no standing, and fail to assert a valid claim, under the Employee Retirement Income Security Act ("ERISA") in Counts One and Three.  Specifically, neither Plaintiffs nor their members have assignments vesting them with the right to bring the claims asserted in the FAC, Plaintiffs have not identified a single member who has sustained an injury in fact, and Plaintiffs' ERISA claims would impermissibly require individualized inquiries that preclude associational standing.  Moreover, Plaintiffs have not, and cannot, identify any ERISA plans to which the ED Review applies because, as explained in *Northeast Georgia Health System*, the ED Review only applies to claims from members with individual commercial health plans.

- 2 -

***Third***, the Emergency Medical Treatment and Active Labor Act ("EMTALA") only applies to ED providers, so Plaintiffs cannot state a claim against Defendants, who are not ED providers, for violating EMTALA. Moreover, Plaintiff's contention that the "fear of nonpayment" for claims submitted under the ED Review may subject their members to EMTALA violations is antithetical to the purpose of the statute; if Plaintiffs' members refused to screen ***any*** patient for fear of nonpayment, regardless of insurance, they will be in violation of EMTALA.

***Fourth***, Plaintiffs have no private right of action under Georgia's insurance laws.

***Fifth***, and finally, Plaintiffs cannot seek an injunction without a viable cause of action.

Plaintiffs have already had an opportunity to cure their inherently flawed claims, but their attempt to do so is futile. Accordingly, the FAC should be dismissed with prejudice.

## FACTUAL BACKGROUND

## I.  THE UNITED STATES' EMERGENCY DEPARTMENT PROBLEM

The use of hospital EDs for non-emergency medical conditions has been a growing problem. Studies show that EDs are treating up to 24 percent of patients

for plainly non-emergency conditions.[1]  To compound the problem, hospitals have

increased their charges for ED visits by 113 percent in the last seven years, further

increasing costs for private healthcare payers.[2]  Government sponsored programs

are having the same problem; the Center for Public Integrity estimates that inflated

ED charges in the Medicare program cost taxpayers at least $11 billion over a

decade's time.[3]  To address this troubling trend, government and private health

care payers, including BCBS Georgia, have explored initiatives that reduce

unnecessary and excessive ED spending to better control the overall cost of

healthcare in the United States.[4]

---

[1] *See, e.g.*, Avoidable Emergency Department Usage Analysis, TRUVEN
HEALTH ANALYTICS, available at http://www.averytelehealth.com/wp-
content/uploads/2018/01/Avoidable-Emergency-Department-Usage-Analysis-
Truven-Health-Analytics.pdf.  The Court may take judicial notice of these public
studies and reports on a motion to dismiss.  *See U.S. ex rel. Osheroff v. Humana
Inc.,* 776 F.3d 805, 812, n. 4 (11th Cir. 2015) ("Courts may take judicial notice of
documents such as the newspaper articles at issue here for the limited purpose of
determining which statements the documents contain (but not for determining the
truth of those statements).")

[2] *See ER Spending among the Commercially Insured Continued to Rise in 2016,
Driven by the Price and Use of High Severity Cases*, HEALTH CARE COST
INSTITUTE, available at http://www.healthcostinstitute.org/healthy-bytes/.

[3] *Cracking the Codes: Hospitals Grab at Least $1 Billion in Extra Fees for
Emergency Room Visits*, The Center for Public Integrity, available at
https://www.publicintegrity.org/2012/09/20/10811/hospitals-grab-least-1-billion-
extra-fees-emergency-room-visits.

[4] *See, e.g.*, Washington State Medicaid: Implementation and Impact of "ER is for
Emergencies" Program, CENTER FOR HEALTH POLICY AT BROOKINGS,

## II.   THE ED REVIEW

BCBS Georgia is a managed care company that issues and administers health benefits plans throughout the state of Georgia.  FAC, ¶¶ 13-15.[5]  As a managed care company, BCBS Georgia has Membership Agreements that specify the types of services and benefits that will be reimbursed under the member's plan.  *See Northeast Georgia Health System,* 2018 WL 4182090, *1.[6]  These Membership Agreements generally state, among other things, that non-emergency care that is provided in the ED is not a covered service.  *Id.*, *2-3.  For purposes of determining coverage, the Membership Agreements generally define "Emergency" or "Emergency Medical Condition" as follows:

> **Emergency (Emergency Medical Condition)**
> "Emergency" or "Emergency Medical Condition" means a medical or behavioral condition of recent onset and sufficient severity, including but not limited to, severe pain, that would lead a prudent layperson, possessing an average knowledge of medicine and health, to believe that his or her condition, sickness, or injury is of such a nature that not getting immediate medical care could result in (a) placing the patient's health or the health of

available at https://www.brookings.edu/wp-content/uploads/2016/07/050415EmerMedCaseStudyWash.pdf (Washington implemented an "ER is for Emergencies" program that saved over $34 million during its first year.

[5] Plaintiffs do not explain Anthem Insurance Companies, Inc.'s business or why they brought suit against it.  *See* FAC, ¶ 16.

[6] The Court may take judicial notice of and consider state court orders when evaluating a motion to dismiss.  *See, e.g.*, *U.S. ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 812 (11th Cir. 2015).

another person in serious danger or, for a pregnant woman, placing the woman's health or the health of her unborn child in serious danger; (b) serious impairment to bodily functions; or (c) serious dysfunction of any bodily organ or part.

*Id.* This standard is referred to as the prudent layperson standard because it evaluates whether an emergency condition exists from the perspective of a prudent layperson.

Beginning in July 2017, BCBS Georgia began reviewing certain ED claims for members with certain types of health plans to determine whether the claims concerned an emergency and, therefore, were covered services under the Membership Agreements. *See* FAC, ¶ 2; *Northeast Georgia Health System,* 2018 WL 4182090, *3. This ED Review process is detailed in the *Northeast Georgia Health System* decision. *See id.*, *3-4, 6 (noting that "BCBS Georgia does not use diagnosis codes to deny ED claims under the ED Review"). The goal of the ED Review is to reduce the inappropriate use of EDs for non-emergencies through the application of the prudent layperson standard.

## III.   PLAINTIFFS' ALLEGATIONS

ACEP is a trade group that allegedly represents "emergency physicians, emergency medicine residents and medical students." FAC, ¶¶ 10, 18. MAG supposedly "works with physicians, hospitals, insurers and legislators in an effort

to reform our health care system." *Id.*, ¶¶ 12, 20-22.  Plaintiffs purport to "bring

this action on behalf of themselves and their association members." *Id.* ¶¶ 1, 4.

Plaintiffs challenge the ED Review, alleging that it "is contradictory to the

'prudent layperson' standard."  FAC, ¶ 4.[7]  Like Plaintiffs' original Complaint, the

FAC contains few allegations discussing the substance of the ED Review or how it

is applied.  *See id.*  Moreover, despite soliciting patient testimonials on ACEP's

website, Plaintiffs still do not identify a single claim that has been reviewed and

denied under the ED Review in alleged violation of the prudent layperson standard.

*See generally id.*  In fact, aside from adding a few cryptic allegations about MAG's

"work" and citing irrelevant data from a political report,[8] the FAC's factual

allegations largely mirror those from the Complaint.

---

[7] Plaintiffs only appear to be challenging the ED Review as applied in Georgia.
*See, e.g.*, FAC at ¶ 12 (noting that MAG's work involves "ensuring that ***Georgians***
have access to the care they need"), ¶ 13 (alleging that "Defendants are the plan
administrators, claims administrators, and/or insurers for health plans and
insurance policies ***covering residents of the State of Georgia* . . .***"), ¶¶ 122-23
(invoking only Georgia state law) (emphasis added).  To the extent that Plaintiffs
are seeking to enjoin the ED Review as applied to any other states, they have failed
to plead facts supporting the Court's jurisdiction for such an injunction.

[8] The FAC references a July 19, 2018 report from Senator Claire McCaskill.  *See*
FAC, ¶¶ 62-65.  The McCaskill report discusses, among other things, changes to
the ED Review process that were implemented in January 2018 and the results of
those changes.  *See* July 19, 2018 McCaskill report, available at
https://www.mccaskill.senate.gov/download/coverage-denied-anthem-report-july-

Plaintiffs' FAC asserts counts for (1) violation of the ACA,[9] (2) violation of

EMTALA, (3) violation of ERISA,[10] (4) violation of state and federal group health

regulations, 45 C.F.R. § 147.138(b) and O.C.G.A. § 33-20A-9, (5) expenses of

litigation under ERISA, 29 U.S.C. § 1132(g)(1), and (6) injunctive relief.  *Id.*,

¶¶ 86-136.  The FAC only seeks declaratory and injunctive relief.  *Id.*, pp. 45-47.

## STANDARD OF REVIEW

**I.**    **RULE 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint 'must

contain sufficient factual matter, accepted as true, to state a claim for relief that is

plausible on its face.'"  *Harris v. Chase Home Fin., LLC*, 524 F. App'x 590, 591

(11th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A

complaint that merely alleges a "possible" or "conceivable" claim for relief is

insufficient; rather, the pleader must ***show*** it is entitled to relief.  *Iqbal*, 556 U.S. at

679-80 (citing, among other things, Fed. R. Civ. P. 8(a)(2)) (internal quotations

omitted).  "[C]onclusory allegations, unwarranted deductions of facts or legal

---

2018.  Despite seeking prospective injunctive and declaratory relief, the FAC
ignores the 2018 information and merely cherry picks irrelevant data from 2017.

[9] The ACA violation is brought under ERISA, 29 U.S.C. §§ 1129(a)(3) and 1185d.
*See* FAC, ¶¶ 91-92.

[10] Despite bringing a claim for benefits under 29 U.S.C. § 1129(a)(1)(B), Plaintiffs'
allegations appear to only be seeking equitable relief under 29 U.S.C. § 1129(a)(3).
*Compare* FAC, p. 37 *with* FAC, ¶¶ 110-111; *see also* Dkt. #18, p. 8.

conclusions masquerading as facts will not prevent dismissal." *Holt v. Crist*, 233 F. App'x 900, 902 (11th Cir. 2007)) (citation and internal quotations omitted). Moreover, "[r]egardless of the alleged facts . . . a court may dismiss a complaint on a dispositive issue of law." *Clark v. Governor's Office of Planning & Budget*, 2013 WL 4718371, at *3 (N.D. Ga. Sept. 3, 2013).

## II.    RULE 12(b)(1)

When making a facial challenge to jurisdiction on the pleadings under Rule 12(b)(1), the Court applies the same standard of review that is applied under Rule 12(b)(6) to determine whether Plaintiffs have "sufficiently alleged a basis of subject matter jurisdiction." *Bailey v. Wells Fargo Bank, N.A.*, 174 F. Supp. 3d 1359, 1361 (N.D. Ga. 2016).  Thus, "at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating'" standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  "[A] plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)

## <u>ARGUMENT</u>

## I.    PLAINTIFFS FAIL TO PLEAD FACTS SHOWING THAT THE ED REVIEW VIOLATES THE PRUDENT LAYPERSON STANDARD

The core premise behind all of Plaintiffs' claims is that the ED Review violates the prudent layperson standard.  *See* FAC, ¶ 4 (claiming the ED Review "is contradictory to the 'prudent layperson' standard"), ¶¶ 72, 74 (alleging that the

268335.1

ED Review violates the ACA and ERISA, respectively, by "failing to properly implement and/or utilize the prudent layperson standard"), ¶ 73 (asserting that the ED Review somehow "subjects physicians to violations of EMTALA" because Defendants are using a standard that differs from the prudent layperson standard). However, Plaintiffs fail to allege ***any*** facts supporting this bare conclusion, nor do they identify a single instance in which Defendants allegedly violated the prudent layperson standard.  *See generally* FAC.  Instead, Plaintiffs' allegations primarily detail their extensive public relations campaign against the ED Review without discussing its substance.  *See generally* FAC, ¶¶ 17-65; *see also supra* n. 8.  When Plaintiffs do describe the ED Review, they allege that BCBS Georgia filters a "minority of [ED] claims" through an "always pay" exception list, "and if [those claims] don't meet any of those exceptions, an Anthem medical director ***will review the claim information using the prudent layperson standard*** . . ."  FAC, ¶ 50 (emphasis added); *see also id.*, ¶ 48 (noting that BCBS Georgia requests "medical records from the treating provider each time as part of the claim review process").  None of these facts show, or even suggest, that the ED Review violates the prudent layperson standard.  Nor do they indicate that a Georgia court, which conducted an evidentiary hearing and found that "the unrebutted evidence showed that ***BCBS Georgia employs a three-step process that concludes with an***

- 10 -

*evaluation under the Prudent Layperson Standard*," was somehow incorrect.  *See Northeast Georgia Health System*, 2018 WL 4182090, at *6 (emphasis added).

Plaintiffs' failure to plead any facts showing that the ED Review violates the prudent layperson standard dooms all of its claims.  *Iqbal*, 556 U.S. at 678-80; *Holt*, 233 F. App'x at 902.

## II.   PLAINTIFFS HAVE NO STANDING, AND FAIL TO STATE A CLAIM, UNDER ERISA (COUNTS ONE, THREE, AND FIVE)

In Counts One and Three, Plaintiffs appear to be seeking enforcement of the ACA and other unspecified "state and federal law" through Section 502(a)(3) of ERISA.  *See* FAC, ¶¶ 93-98, 114-17.  Plaintiffs cannot, however, state a claim under ERISA because (1) neither Plaintiffs, nor their members, have the right to bring a claim for equitable relief under ERISA, and (2) Plaintiffs do not, and cannot, allege facts indicating that the ED Review implicates ERISA health plans.

### A.   Plaintiffs Have No Right to Bring ERISA Claims.

Section 502(a)(3) permits only "a participant, beneficiary, or fiduciary" to seek equitable relief under ERISA.  29 U.S.C. § 1132(a)(3).  Thus, "'[h]ealthcare providers may have [rights] under ERISA only when they derivatively assert rights of their patients as beneficiaries of an ERISA plan,' which requires the provider to 'have obtained a written assignment of claims from a patient with [the right] to sue

under ERISA.'" *Apollo MD Bus. Servs., L.L.C. v. Amerigroup Corp.*, No. 1:16-cv-4814, 2017 WL 10185527, at *11 (N.D. Ga. Nov. 27, 2017) (citation omitted).

Plaintiffs do not allege that they have the right to sue Defendants under ERISA.  Instead, they claim that their members do by way of alleged assignments from patients.  *See* FAC, ¶¶ 94-96, 114-116.[11]  Though a plaintiff typically "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties," *In re Checking Account Overdraft Litig.*, 780 F.3d 1031, 1038 (11th Cir. 2015) (citation omitted), associations may, in limited circumstances, assert standing on behalf of their members.  To demonstrate associational standing, Plaintiffs must allege that "[1] its members would otherwise have standing to sue in their own right, [2] the interests at stake are germane to the organization's purpose, and [3] neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Georgia Republican Party v. S.E.C.*, 888 F.3d 1198, 1201 (11th Cir. 2018).  Though Plaintiffs bear the burden of establishing standing, *id.*, they have not alleged and cannot meet the first and third elements.

---

[11] Notably, MAG claims it "***works with*** physicians, hospitals, insurers, and legislators in an effort to reform our health care system," but fails to disclose who its members are.  *See id.*, ¶ 12 (emphasis added); *see also id.*, ¶¶ 20-22.

1.    **The Supposed Assignments Granted to Plaintiffs' Members Do Not Confer the Right to Pursue the Claims Asserted in the FAC.**

In the Eleventh Circuit, "[a]ssignment agreements are generally interpreted narrowly," and "the scope of an assignment cannot exceed the terms of the assignment agreement itself." *Sanctuary Surgical Ctr., Inc. v. Aetna, Inc.*, 546 F. App'x 846, 851-52 (11th Cir. 2013). For this reason, the Eleventh Circuit has repeatedly held that a mere assignment of benefits is insufficient to confer the right to bring equitable claims under ERISA. *Id.* at 852 ("The plaintiffs' contention stretches beyond its breaking point the plain meaning of the agreement, which assigns only the right to receive benefits and not the right to assert claims for breach of fiduciary duty or civil penalties. Because the agreements do not support plaintiffs' position, they lack [the right] to bring claims under § 502(a)(3) and § 502(c)."); *Griffin v. Lockheed Martin Corp.*, 647 F. App'x 920, 924 (11th Cir. 2016) (finding that a provider with an assignment of benefits from a patient could not bring ERISA claims because "[n]othing in the assignment transferred the patient's right to bring a cause of action for breach of fiduciary duty or seek equitable relief to redress a practice that violates ERISA or the terms of the Plan."); *cf. Griffin v. SunTrust Bank, Inc.*, 157 F. Supp. 3d 1294, 1299-300 (N.D. Ga. 2015) ("[U]nder a narrow reading, the assignment of mere 'benefits' under the Plan does

- 13 -

not provide Plaintiff with the right to bring . . . [a] claim for civil penalties under ERISA").

Here, Plaintiffs' members only purportedly received an "assignment of benefits" that "authorize[s] Plaintiffs' members to bill for any services provided to Defendants' insureds, to obtain payment for benefits billed for on the insureds' behalf, and to appeal any benefit denials."  FAC, ¶¶ 95, 115.  Nothing in these supposed assignments assigned the patients' right to bring equitable claims under ERISA for the failure to apply the prudent layperson standard when evaluating claims for ED services.  *Id.*  Accordingly, Plaintiffs' members, and Plaintiffs, do not have the right to assert claims for violation of the ACA or ERISA through 29 U.S.C. § 1132(a)(3).  *Sanctuary Surgical Ctr.*, 546 F. App'x at 851-52; *Lockheed Martin*, 647 F. App'x at 924; *SunTrust Bank*, 157 F. Supp. 3d at 1299-300.

### 2.   Plaintiffs Also Fail to Allege That Any of Its Members Sustained an Injury in Fact.

In addition to Plaintiffs' failure to meet ERISA's statutory requirements, Plaintiffs fail to explain how any of their members have been harmed as a result of the ED Review.  To have associational standing, Plaintiffs "must make specific allegations establishing that at least one identified member ha[s] suffered or [will] suffer harm."  *Georgia Republican Party*, 888 F.3d at 1203 (dismissing claim for lack of standing, and holding, "the Georgia Party has failed to allege a specific

- 14 -

member will be injured by the rule [that the party was contesting] . . ."); *see also Nat'l Ass'n of Home Builders v. E.P.A.*, 667 F.3d 6, 12-15 (D.C. Cir. 2011) (dismissing association's claim under Rule 12(b)(1) for failing to sufficiently allege an injury to any of its members).  Plaintiffs cannot rely on the likelihood or statistical probability that one of its members was injured; they must identify at least one member who has been or will be imminently injured.  *Summers v. Earth Island Inst.*, 555 U.S. 488, 497-498 (2009).

Here, Plaintiffs merely allege, in conclusory fashion, that "Plaintiffs, vis-à-vis their members, have been harmed by retrospective denials of payment by Defendants as such payments are rightfully owed."  FAC, ¶ 68; *see id.*, ¶ 98 (claiming, without any supporting facts, that Defendants are "denying payment for services which were rendered, even though such payment is rightfully owed"), ¶ 117 (alleging that the ED Review "has resulted and will continue to result in a plethora of denied emergency department claims" without providing any examples).  These unsupported conclusions do not "clearly . . . allege facts demonstrating" that any one of their members have standing.  *See Spokeo*, 136 S. Ct. at 1547 (citation and internal quotations omitted); *Iqbal*, 556 U.S. at 678-79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").  Absent a sufficiently alleged injury in fact to at

- 15 -

least one of their members, Plaintiffs cannot assert associational standing. *Georgia Republican Party*, 888 F.3d at 1203; *Nat'l Ass'n of Home Builders*, 667 F.3d at 13.

### 3. Resolution of Plaintiffs' ERISA Claims Would Impermissibly Require Individualized Inquiries.

Plaintiffs' ERISA claims also require individualized determinations that are incompatible with associational standing. "[A]ssociational standing give[s] way when discrete, individualized inquiries are necessitated" to resolve the plaintiffs' claims. *Rivell v. Private Health Care Sys., Inc.*, 887 F. Supp. 2d 1277, 1289 (S.D. Ga. 2012) (dismissing MAG's claims for misappropriation of likeness because MAG would need to establish that the appropriation in each individual case occurred without consent); *accord Warth v. Seldin*, 422 U.S. 490, 515-18 (1975) (finding no associational standing for injuries to members because "the damages claims are not common to the entire membership. . . each member of [the plaintiff association] who claims injury . . . [must] be a party to the suit, and [the association] has no standing to claim damages on his behalf."). Though "claims seeking a declaration, injunction, or some other form of prospective relief, as is the case here, typically qualify for associational standing," "where the plaintiff's claims 'require a fact-intensive-individualized inquiry,'" associational standing is inappropriate. *Rivell*, 887 F. Supp. 2d at 1289 (dismissing MAG's claims for declaratory and injunctive claims because of individualized inquiries).

- 16 -

Even though Plaintiffs now only seek injunctive relief, this Court must undergo a number of individualized inquiries that make associational standing inappropriate.  For example, to adjudicate any claim under ERISA, the Court will need to assess, on an individualized basis, (i) whether the plan at issue is one governed by ERISA, *see infra* pp. 18-19; (ii) whether the plan contains an anti-assignment provision, *see Physicians Multispecialty Group v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1295 ("[A]n assignment is ineffectual if the [ERISA] plan contains an unambiguous anti-assignment provision"); (iii) whether the participant or beneficiary exhausted his or her administrative remedies, *Buckley v. Caremark RX, Inc.*, 461 F.3d 1325, 1328 (11th Cir. 2006) (dismissing a Section 502(a)(3) claim, among others, and holding, "The law is clear that plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court.  This exhaustion requirement applies equally to claims for benefits and claims for violation of ERISA itself."); and (iv) whether BCBS Georgia's denial of the beneficiary's claim constituted a violation of ERISA or the ACA, *cf.*, *e.g.*, 42 U.S.C. § 18011; 45 C.F.R. § 147.140 (if the ERISA plan is a grandfathered plan, it need not follow certain requirements under the ACA, including 42 U.S.C. § 300gg-19a); among other things.  For this additional reason, Plaintiffs cannot

268335.1

assert associational standing to bring claims under ERISA.  *See Rivell*, 887 F.

Supp. 2d at 1289.

### B.      Plaintiffs Cannot Allege That the ED Review Implicates ERISA Plans.

"ERISA governs only 'employee benefit plans.'"  *Gilliland v. Air Line Pilots*

*Ass'n Intern.*, 741 F. Supp. 2d 1334, 1344 (N.D. Ga. 2009) (citation omitted).

Thus, to state a claim under ERISA, a plaintiff is required to demonstrate that its

claims arise under an ERISA benefit plan.  "Section 502(a)(3) 'does not, after all,

authorize equitable relief' *at large*, but only 'appropriate equitable relief' for the

purpose of 'redress[ing any] violations or . . . enforc[ing] any provisions' of

ERISA or an ERISA plan.'"  *Peacock v. Thomas*, 516 U.S. 349, 353 (1996)

(dismissing a claim under Section 502(a)(3) of ERISA where the alleged

"wrongdoing 'did not occur with respect to the administration or operation of'" an

ERISA plan) (citation omitted) (emphasis in original); *see Cataldo v. U.S. Steel*

*Corp.*, 676 F.3d 542, 556-57 (6th Cir. 2012) (quoting the same, and dismissing

complaint under Rule 12(b)(6) because, among other things, plaintiffs failed to

"establish that at least one defendant breached the plan documents or violated

ERISA in some other way"); *cf. Moon v. BMX Techs., Inc.*, 577 F. App'x 224, 228-

29 (4th Cir. 2014) (quoting the same, and dismissing complaint that failed to allege

facts demonstrating that the defendant was an ERISA fiduciary).  In addition, 29

U.S.C. § 1185d – under which Plaintiffs purportedly bring their ACA claim – only applies to ERISA "group health plans."  FAC, ¶ 92 (citing 29 U.S.C. 1185d(a)(1)).

As explained in *Northeast Georgia Health System*, "BCBS Georgia only uses the ED Review for claims that were submitted on behalf of members with BCBS Georgia ***individual commercial health plans***."  2018 WL 4182090, at *4. Thus, Plaintiffs have not, and cannot, allege facts showing that the ED Review has been applied to ERISA group plans.  Because the ED Review does not implicate ERISA, Plaintiffs cannot state a claim for an ERISA violation.  *See Peacock*, 516 U.S. at 353; *Cataldo v. U.S. Steel Corp.*, 676 F.3d at 556-57; *Moon v. BMX Techs., Inc.*, 577 F. App'x at 228-29.[12]

## III.   PLAINTIFFS HAVE NO CAUSE OF ACTION UNDER EMTALA (COUNT TWO)

"Congress enacted EMTALA . . . to remedy the narrow problem of emergency rooms turning away indigent patients."  *Apollo MD*, 2017 WL 10185527, at *12 (citation and internal quotation omitted).  The statute requires healthcare providers in EDs to (1) perform a medical screening, and (2) if the screening reveals an emergency medical condition, provide treatment to stabilize

---

[12] Because Plaintiffs fail to state a claim under ERISA, they cannot recover attorney's fees or costs under ERISA in Count Five.  *See Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983) ("[A]bsent some degree of success on the merits by the claimant, it is not 'appropriate' for a federal court to award attorney's fees under" ERISA).

the condition.  *See* 42 U.S.C. § 1395dd(a), (b).  EMTALA may be enforced against

ED providers through either (1) civil money penalties that are imposed by the

Centers for Medicare and Medicaid Services ("CMS"), or (2) "a civil action

against the participating hospital."  42 U.S.C. § 1395dd(d)(1), (2).  "[O]nly

hospitals are amenable to suit under [EMTALA] . . . There is no evidence that

Congress intended for EMTALA to apply to issues arising from insurers'

reimbursement of care administered pursuant to the statute's requirements."

*Apollo MD*, 2017 WL 10185527, at *12 (dismissing EMTALA claim against a

health plan); *see Dearmas v. Av-Med, Inc.*, 814 F.Supp. 1103, 1108-09 (S.D. Fla.

1993) (dismissing EMTALA claims because "the plain wording of § 1395dd"

indicates that an HMO could not be sued under EMTALA); *Bourbon Cmty. Hosp.,*

*LLC v. Coventry Health & Life Ins. Co.*, No. 3:15-cv-00455, 2016 WL 51269, at

*6 (W.D. Ky. Jan. 4, 2016) (dismissing EMTALA claim because "EMTALA does

not apply to MCOs").

     In spite of the plain language of the statute and well established case law,

Plaintiffs' FAC asserts an EMTALA claim against BCBS Georgia, a health plan,

and Anthem Insurance Companies – none of whom are healthcare providers.  *See*

FAC, ¶¶ 14-16, 101-108.  Nevertheless, Plaintiffs claim that the ED Review "is

unlawful . . . because it subjects hospitals and physicians to" potential "[l]iabilty

under 42 U.S.C. § 1395dd(d)(1)." FAC, ¶¶ 102, 104. Plaintiffs recognize that EMTALA "prohibits hospitals and physicians who practice in Medicare-participating hospitals from ***refusing to treat people based on their insurance status or ability to pay***," but also suggest that ED providers may eschew their federally-mandated obligations and "***refuse to screen the patient for fear of nonpayment under the ED [Review]***." *Compare, e.g.*, FAC, ¶ 102 *with* FAC, ¶ 106 (emphasis added). On its face, this claim is completely illogical; if Plaintiffs' members refuse to treat ***any*** patient "for fear of nonpayment," then they are choosing to engage in conduct EMTALA was enacted to prevent.

Regardless, Plaintiffs cannot bring a claim against Defendants, or any defendant, for violating 42 U.S.C. § 1395dd(d)(1) because that provision is only enforceable by CMS. *Holcomb v. Monahan*, 807 F. Supp. 1526, 1530 (M.D. Ala. 1992) (dismissing an EMTALA claim under 42 U.S.C. § 1395dd(d)(1)(A), and holding, "Section 1395dd(d)(1)(A) is a civil penalty provision to be enforced by the United States government or one of its agencies, not by a private plaintiff."). Because EMTALA does not apply to Defendants, Count Two should be dismissed. *Id.*; *Apollo MD*, 2017 WL 10185527, at *12; *Dearmas*, 814 F.Supp. at 1108-09; *Bourbon Cmty. Hosp.*, 2016 WL 51269, at *6.

- 21 -

## IV.    PLAINTIFFS HAVE NO PRIVATE RIGHT OF ACTION UNDER THE GEORGIA INSURANCE LAWS (COUNT FOUR)

Plaintiffs assert that BCBS Georgia violated O.C.G.A. § 33-20A-9 and § 33-20A-3, which are Georgia's implementation of the prudent layperson standard. This claim fails because this statute does not expressly or impliedly authorize a private right of action.[13]

A private right of action exists under Georgia law only where the "statutory text [] expressly provide[s] a private cause of action.'" *Walker v. Oglethorpe Power Corp.*, 341 Ga. App. 647, 657 (2017).  "Even when the private right of action is alleged to be *implied* by the statute, the indication . . . must be *found in the provisions of the statute at issue*, not extrapolated from the public policy the statute generally appears to advance." *Id.* (emphasis in original). "In the absence of such textual support, a cause of action does not exist and courts may not create

---

[13] Plaintiffs' FAC does not appear to assert an independent claim under the ACA, or its implementing regulations, but instead, alleges that it can seek redress for ACA violations through ERISA.  *See* FAC, ¶¶ 92-96; Dkt. #18 at pp. 12-13.  To the extent that Plaintiffs still maintain that they can separately sue under the ACA, such claims would be barred because the ACA does not have a private right of action.  *See, e.g.*, *Ass'n of New Jersey v. Horizon Healthcare Servs., Inc.*, No. CV 16-08400(FLW), 2017 WL 2560350, at *3-5 (D.N.J. June 13, 2017) (no private right of action under 42 U.S.C. § 300gg-5); *Mills v. Bluecross Blueshield of Tenn., Inc.*, 2017 WL 78488, at *6 (E.D. Tenn. Jan. 9, 2017) (no implied private right of action under 42 U.S.C. § 300gg-22); *Dominion Pathology Labs., P.C. v. Anthem Health Plans of Va., Inc.*, 111 F. Supp. 3d 731, 736 (E.D. Va. 2015) (no implied private right of action under 42 U.S.C. § 300gg-5).

one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.*

Georgia appellate courts have analyzed other provisions of the insurance laws codified in Title 33 of the Georgia Code, and determined that it does not provide an express or implied private right of action. *See State Farm Mut. Auto. Ins. Co. v. Hernandez Auto Painting & Body Works, Inc.*, 312 Ga. App. 756, 761 (2011) (finding no private cause of action under Title 33); *Cross v. Tokio Marine & Fire Ins. Co.*, 254 Ga. App. 739, 741(1)(2002) (holding that O.C.G.A. § 33–3–28(d) did not create a private right of action against an insurer).  The same result should inure here.

First, the statutory text of O.C.G.A. § 33-20A-9 does not reflect any legislative intent to create a private right of action.  "Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to" create a private right of action.  *Alexander v. Sandoval*, 532 U.S. 275, 289 (2001).  O.C.G.A. § 33-20A-9 focuses on the regulated entity (*i.e.*, the managed care organizations) rather than the protection of any particular individual, stating that "every managed care plan shall include . . ."  O.C.G.A. § 33-20A-9. Because of this focus, there is no legislative intent to create a private right of action.  *See Martes v. C.E.O. of S. Broward Hosp. Dist.*, 683 F.3d 1323, 1328 (11th

- 23 -

Cir. 2012) (no private right where statute focuses on the billing practices of medical providers rather than the individual patients); *cf. Walker*, 341 Ga. App. at 656 (finding no private cause of action "even if the statute imposed the duties on [the defendants] that the [plaintiffs] allege").

Plaintiffs argue that there is a private right of action because the chapter they are suing under (Chapter 20A of Title 33) is titled the "Patient Protection Act;" however, this reasoning was rejected by *State Farm* and *Walker*, which both held that a private right of action cannot be inferred "from the public policy the statute appears to promote" but only from the actual textual provisions. *State Farm*, 312 Ga. App. at 761; *accord Walker*, 341 Ga. App. at 657. Indeed, even though the federal analogue to this statute it titled the "Patient Protection and Affordable Care Act," numerous federal courts have held that there is no private right of action under the statute. *See supra* n. 13.

Second, O.C.G.A. § 33-20A-9 is enforced by Georgia's Insurance Commissioner, *see* O.C.G.A. § 33-2-2, which precludes a private right of action. *See Hernandez Auto Painting*, 312 Ga. App. at 761 (noting that "the General Assembly provided the Insurance Commissioner with the authority to enforce the provisions of Title 33" when finding no private cause of action); *Cross v. Tokio Marine & Fire Ins. Co.*, 254 Ga. App. 739, 741 (2002) (finding that O.C.G.A §

33–3–28(d) did not create a private right of action because he "failure to comply with the statute comes within the conduct subject to sanctions by the Insurance Commissioner as the exclusive regulatory remedy.").  For these reasons, Plaintiffs cannot bring a private cause of action under O.C.G.A. §§ 33-20A-3 and 33-20A-9.

## V.   PLAINTIFFS CANNOT SEEK INJUNCTIVE RELIEF WITHOUT AN UNDERLYING CAUSE OF ACTION (COUNT SIX).

Plaintiffs' sole remaining "count" for injunctive relief also fails because Plaintiffs have no independent cause of action supporting it.  "[A]ny motion or suit for either a preliminary or permanent injunction must be based upon a cause of action . . . There is no such thing as a suit for a traditional injunction in the abstract." *Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1127 (11th Cir. 2005).  As established above, Plaintiffs have failed to state a claim for a cause of action through which they may seek injunctive relief.  Accordingly, Plaintiffs' "count" for injunctive relief should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiffs' FAC with prejudice, and for any further relief that this Court deems proper and just.

Respectfully submitted this 2nd day of November, 2018.

/s/ James L. Hollis

T. Joshua R. Archer
Georgia Bar No. 021208
James L. Hollis
Georgia Bar No. 930998
**BALCH & BINGHAM, LLP**
30 Ivan Allen Jr. Blvd. N.W., Suite 700
Atlanta, Georgia 30308
Telephone: (404) 261-6020
Facsimile: (404) 261-3656
E-mail: jarcher@balch.com
E-mail: jhollis@balch.com

Kenneth Smersfelt (*Pro Hac Vice forthcoming*)
**REED SMITH LLP**
355 South Grand Avenue, Suite 2800
Los Angeles, California 90071
Telephone: (213) 457-8001
Facsimile: (213) 457-8080
E-Mail: ksmersfelt@reedsmith.com

Martin Bishop (*Pro Hac Vice forthcoming*)
Thomas C. Hardy (*Pro Hac Vice forthcoming*)
**REED SMITH LLP**
10 South Wacker Drive, 40th Floor
Chicago, Illinois 60606
Telephone: (312) 207-1000
Facsimile: (312) 207-6400
E-Mail: mbishop@reedsmith.com
E-Mail: thardy@reedsmith.com

268335.1

## CERTIFICATE OF COUNSEL REGARDING FONT SIZE

Counsel certifies that the foregoing has been prepared using Times New Roman font size 14 in accordance with Local Rules 5.1(B)(3) and 7.1(D).

This the <u>2nd</u> day of November, 2018.


<u>/s/ James L. Hollis</u>
James L. Hollis

## CERTIFICATE OF SERVICE

I hereby certify that on this the 2nd day of November, 2018 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send an e-mail notification of such filing to the following attorney of record:

> Howard W. Reese, III, Esq.
> Brittany H. Cone, Esq.
> **HALL BOOTH SMITH, P.C.**
> 191 Peachtree Street, N.E., Suite 2900
> Atlanta, Georgia 30303-1775
> treese@hallboothsmith.com
> bcone@hallboothsmith.com

> /s/ James L. Hollis
> James L. Hollis

- 28 -